Good morning and may it please the court. My name is John Meyer. I'm with the firm Sirianni, Yeltsin, Meyer & Spoonimore. With me at counsel table is Neil Cable. He is the local counsel for the state plan in this case. I'd like to reserve 10 minutes for rebuttal. The issues in this case are fairly technical and they require the court to interpret a technical statute. For this reason, the briefing in the case is clearly paramount and on the theory that less is more, I intend to restrict my arguments in this presentation to the question of statutory interpretation here. Of course, I'm pleased to answer any questions you may have. The issue in this appeal is whether a qualified domestic relations order or quadro can extinguish Mary Hamilton's right to a survivorship annuity when the quadro fails to address survivor benefits in any fashion. There is no dispute here that Mary Hamilton qualifies under the statutory requirements for a qualified pre-retirement survivor annuity under section 1055 of ERISA. She does so because when her spouse, Mr. Hamilton, died, she had been married to him for six years and he was a vested participant in each of the three ERISA plans at issue here. The other relevant facts are that there is a domestic relations order that required Mr. Hamilton to name his children as beneficiaries on each of his three pension plans. But more importantly, that domestic relations order was silent with respect to survivorship rights or death benefits. It speaks only in terms of Mr. Hamilton's pension benefits. The district court concluded that the statute does not resolve the question of whether survivor benefits trump the right of the children to pension benefits. He cited this section, what, 605, that says the alternate AE under the quadro takes precedence over the later spouse? Yes, he did, Your Honor. And what does that section mean? I mean, why is it there? It's a good question. I don't know what they say it means. Yes, at first glance, it may appear to support the district court's conclusion. However, first, of course, we need to interpret the statute and the plan must be consistent with the statute. But secondly, that provision can be read consistently with our view of the statute. It speaks of any rights of a former spouse or alternate AE under a quadro. And so the initial question under that provision is what rights does the former spouse or alternate AE have? What benefits are conferred by the quadro? Here we have only a right to pension benefits. The issue of survivor benefits simply is not addressed in the quadro. Now, the national plan's interpretation of this provision in denying the children's claim here, it is not coming out of left field. It is not only supported by the statute. It is supported by the plan's own guidelines. As we cited, those guidelines provide as follows. They say if the quadro does not provide that the alternate AE is to be the participant's surviving spouse for the pre-retirement surviving spouse pension, and if the participant dies before the alternate AE has begun receiving a benefit, which is the case here, no benefits will be paid under the quadro. So the guidelines So you're reading from the national? I'm reading from the national plan's guidelines. That's excerpts of record at 200. And that is fully consistent with the national plan's reading of that provision. I'm trying to understand the practical consequence because put yourself in the situation of the divorce counsel, okay? And people were wrestling with what do you do with quadros and make sure that we dot all the I's and cross all the T's. So is there any problem with designating the children as alternate payees in principle? Well, nothing in principle, no. They can be alternate payees. And they only, as I understood it, they only got to be that up until they were 18, is that correct? That is correct. Is there any way that he would have been permitted to receive pension benefits before they became 18 by virtue of his age or some other status? No, because he died. No, I understand he died. Let's say he didn't die. Right, okay. Assuming he didn't die and the children became eligible for those benefits. Yes, they could become eligible for his pension benefits pursuant to the quadrant. Okay. Maybe that isn't my question. It needs to be more precise. Given his age and the fact that they're covered until they're 18, was there a factual predicate for them possibly receiving actual, as you call it, pension benefits? I believe that he would have become eligible at age 55 to receive his pension benefits. At that point in time, assuming he was still alive. Right. And assuming that the children were still under 18, which I believe was theoretically possible. That was my question. Yes. Then they would become entitled to those pension benefits. Okay. That's, of course, not what happened here. Right. And if, would it have been possible in the quadro prior to his remarriage to have basically said the former spouse becomes the spouse for purposes of the survivor annuity, correct? Yes. That's what the statute requires. Can you then further alienate that to the children? I believe so, Your Honor. I believe that the quadro could actually provide that the spouse then must transfer those benefits or assign those benefits to the children. So quadros are a wonderfully flexible instrument. You're not getting the tax consequences of that, though. Right. Yes. Certainly there would be. But absent the designation of the, I guess we'll call her the former spouse. Right. Then the, by virtue of law, the surviving spouse, which in this case Mary. Right. Falls under the provision of the QPSA. Correct. She is the surviving spouse. The former spouse is not the surviving spouse. If they hadn't been married for a year, then automatically the former spouse would have been the surviving spouse, is that right? I don't think she would have been the surviving spouse because she would still be a former spouse. But she would be, she would get the benefit? If she had been assigned that benefit in the quadro, yes. Your Honor is correct that there is a one-year marriage requirement in order to qualify for a that provision. The relevant statute here where we have the intersection between the QPSA provisions in 1055 and the quadro provisions in 1056 is in 29 U.S.C. 1056 D3F i. That is the statute that reconciles two seemingly mandatory and potentially conflicting statutory directives. And the question, the critical language is this. The statute says, to the extent provided in any domestic relations order, a former spouse may be treated as a surviving spouse for purposes of awarding a surviving spouse annuity. And as Your Honor pointed out, what this means is that someone who qualifies as a surviving spouse under section 1055, like Mary Hamilton in this case, cannot lose that benefit unless a quadro actually and explicitly provides that a former spouse is to displace the surviving spouse. Do you read that provision? Let's say that the quadro didn't designate the original spouse, but he remarried and he dies within one year. Do you read this as a self-executing statute so that spouse number one gets the benefit, or would it still have been required to put in the quadro, you get it if my new spouse dies less than a year? Well, I think it would depend on what the quadro said. The quadro... Let's say the quadro is silent. Is this self-executing and the spouse number one gets it anyway if the husband dies within one year of the new marriage? Okay. So you're assuming that the quadro doesn't assign any pension benefits whatsoever, or death benefits? Correct. Okay. In that case, I think we need to look to the designation of beneficiaries by the participant, that those may occur on plan forms. There are three pension plans at issue here. He may have filled out forms designating beneficiaries. If he had designated his current wife as a beneficiary, even though they had not been married for one year, and the quadro was absolutely silent with respect to pension benefits or death benefits, then his current wife would qualify for benefits in that case. So you need to look beyond the quadro in that situation. Okay. Then let me just ask one more question. Sure. If he had put in his quadro, spouse number one will be my surviving spouse. He then gets married. Does that mean spouse number two, even though she's a surviving spouse, by operation of law never becomes the beneficiary? That is correct. Okay. Yeah. The magic words are in the quadro at that point. Now, we can ask why did Congress require this explicit language in a quadro in order to assign surviving spouse benefits? And I think the answer is that first and foremost, Congress was concerned with the rights of surviving spouses when it enacted the Retirement Equity Act in 1984. There is all sorts of legislative history showing Congress's... But it was also concerned about the requirement of following a quadro. Your Honor is absolutely correct. Two things, right? That's the other thing. And children. Yes, and children. Now, I'm not suggesting that Congress was not concerned with children or with former spouses, but it did provide a method for assigning benefits to them in this situation. The divorce... But did it also say that you're required to follow the terms of the quadro in general? In general, yes. I have no... Your opponent relies on that quite considerably. He does. He does. But we need to look to the specific statutory intersection of the QPSA and the quadro. And that's what we're pointing to here. We can also look at the legislative history. The Senate and House reports state that when a participant dies before retirement age, an alternate payee, like the children in this case, are entitled to benefits, quote, only if the qualified domestic relations order requires survivor benefits to be paid. There simply is no language like that in this quadro. Now, as I was saying, the beauty of this approach is that it puts the power to control the disposition of death benefits in the hands of the drafter of the quadro, assuming he or she knows what he or she is doing. And so the quadro can be a very flexible instrument and was flexible enough in this case to award benefits to the children. Could the statute have been drafted more clearly? Probably. But the meaning of the statute has been clarified many times by the courts, by commentators, by administrative policy statements from the Department of Labor and the Internal Revenue Service. You're saying the quadro here just doesn't deal with death benefits at all? It does not. It deals with the distinct category of pension benefits. I think that I will conclude now by simply saying that the statute resolves this question in the provision that we have cited. And a careful parsing of the statute reveals that the plan's interpretation is correct. Not only does the statutory language support that result, there are many, many authorities, ranging from circuit court opinions in the Fifth Circuit and the Third  Circuit, to administrative policy statements. They all point toward the same result. Mary Hamilton requests that this Court reverse and enter judgment in her favor, requiring the plans to pay her a QPSA benefit. I'll preserve the rest of my time. Thank you. Good morning, Your Honors. May it please the Court. My name is Jerry Scowcroft. I'm co-counsel for the children David and Sarah Hamilton. With me at the counsel table is co-counsel Nicholas Garpelli. I'd like to begin by addressing briefly some of the questions that came up in the main argument. The first is that counsel for the plan stated that this quadro addresses only the pension benefit. The reason why they say that is in all the cases they relied upon, it was held that if a quadro addresses only the participant's pension and not a QPSA, a qualified pre-retirement survivor annuity, then a qualified pre-retirement survivor annuity is not assigned. Those cases are not applicable here for two superficial reasons and one big one. Two superficial ones are, one, the children are not a former spouse and they're not claiming a qualified pre-retirement survivor annuity. The big one is that in all those cases, the issue was what was assigned by the quadro. A quadro can be a quadro with respect to one benefit, such as the benefit payable in the participant's life, and not with respect to another one, such as the benefit payable after retirement. This quadro just refers to pension benefits. No, it doesn't. It absolutely does not. And that's exactly what it's getting to. This quadro directs the children to be named as the beneficiaries. You don't name the beneficiaries, you don't know, of the participant. Benefits under the pension, you do not – during the participant's life, benefits are paid to him. They're not paid to a designated beneficiary. They're paid to him. When a participant designates a beneficiary, it means the person that gets the benefits that are payable when the participant dies. Okay. Let me ask you this. Is there anything under the statute that permits the QPSA to be assigned to the children? Well, that's a question that hasn't been resolved in the law, and I'd say that's a question that the law is not clear on. What the statute says is that a quadro can assign any benefit payable with respect to a participant. So in this case, there's no question. The district court found a lump sum death benefit is a benefit payable with respect to the participant. It's not payable to him because he's dead. It's payable with respect to him. And it's established in this case that the quadro assigned that benefit. The district court so found, and it hasn't been appealed. Now, it's also recognized in several cases that a quadro that assigns a benefit payable with respect to a participant will reduce benefits that would be paid to someone who comes later, such as a potential surviving spouse. So logically, if you just look at the statutory language, a quadro could assign to the children, certainly can to a former spouse, it could assign to the children an annuity that's paid after the participant dies, logically. A quadro cannot increase the actuarial liability of the plan, and so any such assignment would have to evolve a reduction of monthly payments to achieve actuarial equivalence. It seems to me, and you can correct me if I'm wrong, but if you read the IRS and then all the other guidelines for talking about quadros, it's suggested there that actually you can't assign the surviving spouse right to anybody other than the current spouse. And that is possibly true. As I said, Your Honor, let's just follow that through for a minute. If you can't assign to anyone other than the current spouse, and this quadro didn't make such a designation, then how would you extinguish Mary Hamilton's statutory right to a QPSA? Because if it is true that you can't assign a statutory annuity to anyone but a spouse, current or former spouse, and that is suggestible from the language of Section 205, you can still assign other forms of benefit to other alternate payees. And the quadro takes precedence, so the quadro is paid first. Then when the plan pays these other forms of benefit pursuant to the quadro, it has to reduce what it pays to a surviving spouse so that its actuarial liability is not increased. That's how it would work. But you see, that you basically would extinguish a statutory right under that. I mean, what I'm trying to – I understand your position. I'm just trying to figure out how you get there through adding up the statutes, and I'm not sure it – you have to assign your rights under the quadro consistent with the law, correct? Right. And then how – if you take that Section F under the quadro statute, the big F, I guess it is, that says what can happen with respect to a surviving spouse, if you haven't done that, how have you assigned your rights consistent even with the quadro statute? The accountants confuse divest with assign. They say that a surviving spouse annuity can only be divested if a quadro specifically mentions survivor benefits. That's not what Section F says, and I don't think Section F applies to this case at all because these are children and not surviving spouses, and they're being assigned to love some death benefit and not an annuity. But you can assign a benefit. Section F says only what's necessary to assign a benefit. It doesn't say anything about divesting. It says what's necessary to assign a benefit. So if you look at the basic concepts on which this whole thing is based, the plan determines what benefits are paid to or with respect to a participant, but when the participant divorces, the State court determines by State law what the marital obligations are. But a death benefit is quite distinct from a pension benefit. Yes, it is. A death benefit, I mean, we're using terms. Why is this quadro covered death benefits? Number one, because the district court found that and that finding hasn't been appealed. But number two, there are many cases. Well, it's a question of law, isn't it? In terms of what the quadro means, I think the Court could take review of that. You're saying there had to be a separate appeal on that issue? No. I just think that that has been resolved. But if the Court wishes to consider that, all of the plans provide that if the participant dies before earliest retirement age, as in this case, a lump sum death benefit can be payable to the participant. What the quadro provisions contemplate, 206d3b, which says that you can assign a benefit payable with respect to a participant to an alternate payee, is that that lump sum death benefit can be assigned to an alternate payee. Children are alternate payees because they are children of the dependents of the participant. Once you assign that lump sum death benefit to an alternate payee, it is no longer a benefit that is payable to or with respect to a participant, and it cannot be the subject to a survivor of a survivor annuity. If you look at 205, the survivor annuity is only for benefits payable to a participant. Quadro is assigned benefits. It's got to be a lump sum, though, and that was what Judge McEwen, I think, was asking earlier. You're saying it's got to be a lump sum? I think in this case, it has to be a lump sum because that is the form of benefit that the plan provides to beneficiaries other than a spouse. So in this case, it has to be a lump sum. Could you help me out on the age of the children? I was just trying to understand, taking it back to the time of divorce and looking when the husband might have been first eligible to take pension benefits, would the children have still been under 18? Let's say he lived longer. Well, I think under the terms of this particular quadro, had the youngest child passed 18 before the participant died, then the quadro wouldn't have applied because the quadro... I understand that, but my question is slightly different. I'm having him not die. And he goes on and he works, and then he becomes eligible for a pension at 55 or whatever. What would have been, at the time of first eligibility, what would have been the ages of the children? Well, I don't recall what the participant's age is. It's possible that the – I don't recall what the participant's age was. I think he's 52 or 53. So I think even if he'd gotten to earliest retirement age, at least one would have been under 18. I don't recall. It's possible that – well, this particular quadro does not contemplate payment to the children of any portion of the benefits that the participant would have received during his life. As I said before, you don't designate a beneficiary to benefits that the participant gets already. This quadro contemplates payment of a benefit that is payable under the plans when the participant dies. And so the only question is... Why is that? I don't understand. It's just how the quadro is worded. Doesn't say anything about dying. And what does it say about that? Because designation of a beneficiary – when you designate the children as beneficiaries, you're designating them as beneficiaries of a benefit that's payable when the participant dies. Well, not usually. Normally what you do when you have a divorce situation is you say, look, the biggest asset of the family is the house and the pension. And when pension is payable, I'm going to divide it up so you, the husband, don't get it all. When you get starting to pay, I'm going to have a secondary beneficiary, whether it's the wife or the children. And that's a way of evening up the property benefits. So it's not clear to me that if you assign somebody the pension benefits that it means they have to die first. It doesn't. It depends on how the quadro is worded. This quadro said, the participant shall designate the children as his beneficiaries. Again, that... But you don't have to be a dead – the guy doesn't have to be dead for somebody to be a beneficiary. I think that's the question. No, no. If the quadro had awarded the children a portion of the benefits payable to the participant during his life, they would have been entitled to recover that. There's no question about that. But the participant doesn't designate a beneficiary for that purpose. The benefits are payable to him in the absence of a beneficiary designation. The participant designates a beneficiary for benefits that are payable on his death. And that is a death benefit, and that's what the children claimed in this case. And I should say that when the children submitted their quadros to the plan, each of the plans wrote back and said, this lump sum benefit is the benefit that will be paid to the children, and they're entitled to recover under the plans if they're entitled to recover at all. So... Maybe the support for your argument is found in that they were contemplating the pension almost as a secured instrument in lieu of life insurance. Right. Right. That's exactly right. The quadro even says that. The participant had cancer, and he couldn't – he could not get life insurance. So as a substitute, they ordered the participant to name the children as the beneficiaries under his pension. That's exactly what the quadro says. So the state court determined under state law who has a right to receive these benefits. Were it not for the quadro provisions – and it does so by means of a domestic relations order – were it not for the quadro provisions, that domestic relations order would be preempted by the Spencer III clause or the anti-assignment clause of ERISA. The quadro provisions say the state court domestic relations order is not preempted if it meets one condition, and one condition only. And that condition is that it be a quadro. I don't think anybody disputes, or at least we can assume for purposes of talking here, that it meets all the technical things for quadro. But the question is if – whether it can override a statutory benefit. Well, there are two statutory requirements. Requirement number one, the statute says that every pension plan must provide for the payment of a quadro. Now, it specifically is talking about pension plans. A pension plan is a plan that by definition has to provide a retirement annuity. So 206D3A is saying every pension plan that provides a retirement annuity must provide for the payment of a quadro, even though a retirement annuity would otherwise be payable. And it also says that the quadro can assign any benefit payable with respect to a participant. The second statutory requirement is 205. It says every pension plan must provide survivor annuities calculated on the basis of benefits payable to the participant. In other words, a participant can only, under the statute, confer on a surviving spouse benefits that he has a right to receive himself. Correct. After the benefits – after benefits have been assigned by a prior quadro, they cannot any longer be received by the participant, and they're not subject to the statutory annuity. ERISA operates on a – there's two – in the vernacular, there's two sort of basic concepts. One is first-in-time, first-in-right, or first-come, first-served. And the other is caveat emptor. When a quadro assigns a benefit to an alternate payee, it means that the state court has determined that that benefit is paid to that alternate payee. That alternate payee is the person who has the right to receive the benefit. Under ERISA – and here's the point about the order being a quadro – the quadro must be paid if it meets the quadro requirements. The plan cannot look behind that and see – and second-guess that state court determination. The state court has determined that the alternate payee is the person that has the right to receive the benefit. So the plan must pay the quadro. You're saying the benefit the alternate payee gets in this case is a death benefit. Right. And I don't see anything in the quadro that supports that. Well, it would have been better, Your Honor, if the quadro had been drafted better and if it had said the alternate payee shall receive the lump-sum death benefit payable on the participant's death and no surviving spouse shall receive that benefit. It would have been better if the quadro had said that. But it didn't. And the courts have recognized that quadros don't have to be that well or that artfully drafted in order to be enforceable. Well, that's a pretty important matter, whether you're going to pay them the pension benefits that this participant gets who lives on beyond his – when he becomes eligible for a pension or whether you're talking about his payment that's due when he maybe dies before he reaches that age. I mean, those are two different things completely. Right, right, right. So how can you say this thing applies to one and not the other? Because the plans determine – a quadro has to assign a benefit that's payable under the plans. Under these plans, the benefit that's payable to an alternate beneficiary other than a spouse is a lump-sum death benefit. So when the participant is ordered to designate his alternate payees as beneficiaries, that means he's designating his alternate payees as the beneficiary of that lump-sum benefit. Now, let's look at – Let me go at it a little differently. You'd suggested that maybe this issue of whether you have to specifically name a spouse and whether children can be named as a beneficiary may have some ambiguity under the statute. If that's the case, don't we then go to the plans and see whether the plans interpretation is reasonable? Let's just say we can't come to an absolute legal determination, which I think is our first obligation rather than looking at the plan. Do we then go to the plans, and under what standard do we benchmark whether they made a legitimate or a reasonable decision or interpretation of the plan? Well, there's two parts to that question. Number one, I don't think it's relevant to the question of whether the quadro is payable. ERISA requires the plan to provide for the payment of the quadro. The plan cannot – plan drafters cannot write that requirement out. Number two, on the question of attorney's fees, there's a question of whether the plan acted reasonably in interpreting its own provisions to say that there's a survivor annuity primes the quadro. In its – in its opinion, on the summary judgment motion, Judge Zilli ruled that the plan acted unreasonably by disregarding paragraph 6.05, which specifically says that the rights of alternate pays under a quadro take precedence over the rights of a surviving spouse. And by the way, that's nothing special about the national plan. That's just an articulation of what ERISA already requires. Kagan. But when we move for attorney's fees, the Judge Zilli ruled for purposes of the HUML, that the plan had not acted in bad faith on that issue because the law is not that settled and so forth. Judge Zilli ruled that on the balance of the HUML factors, we should be entitled to attorney's fees, only those attorney's fees that are entailed by – by the plan's breach of their fiduciary duty and the excess litigation. We contend that the judge's discretion, the judge has discretion in that case, and the judge's exercise of discretion was reasonable. Yeah, but if we rule in your favor, I don't think we have a – the attorney's fee issue isn't anything novel, I think. Yeah, yeah. But again, back to this conundrum, because it's very interesting. There's no question in this case that if the participant had not remarried, the children would have gotten a lump sum benefits. But suppose a participant remarries. Then you have to look at whether he gets divorced or not, because if the participant had divorced the surviving spouse, she could not have been awarded by a quadro these very lump sum benefits. And the reason is because ERISA says you can't award to – to an alternate pay something that's been awarded by a previous quadro. So if they can't be awarded by a quadro, that means they're no longer payable with respect to the participant. If they're no longer payable with respect to a participant, they can't be the subject of a spousal annuity. So the surviving spouse is claiming that she can prime the participant if they don't divorce with respect to a benefit that she's prohibited from claiming if they do divorce because it's been awarded by a prior quadro. The children contend that that inconsistency is absolutely fatal to their case. Moreover, the participant could divorce the surviving spouse and marry again. And we'd have these same questions all over again. That's completely contrary to the scheme of ERISA. So the Ninth Circuit stated in the – stated in the Tice case that the rights of the non-payee are supposed to be decided by judicial decision. They're not supposed to be determined by vicissitudes, by events that happen that the alternate payee has no control over, such as whether the participant retires, dies, and so on. They're supposed to be fixed when the alternate – when the quadro is not. Well, wait – wait just a second. If – if there were a quadro naming Mary as the surviving spouse and, you know, they were getting divorced and then he died and he hadn't remarried, why is it absolutely clear that she might not be able to recover under that if her spouse had never been named? Well, it's absolutely clear that the quadro could not have signed Mary the lump sum. Because that was already assigned by a previous quadro to the children. The question is – and so the question you posit has not been decided by cases. But the lump sum had already been decided. If the quadro had assigned Mary a survivor annuity, the plan couldn't pay the whole annuity to Mary because that would increase its actuarial liability. If it could pay the lump sum to the children and there's still some left over to pay Mary a reduced annuity, there's no problem with that. But in any event, Mary could not be assigned something that was already assigned to the children. That's ERISA 206-D3B. And it kind of brings us back, though, to the – none of the problem is what was assigned to the children under the terms of ERISA. That's really what we have to figure out. And what was assigned to the children is the lump sum death benefit that's payable on a participant's death to alternate beneficiaries other than a spouse under the specific terms of the plan in which all the plans identified as the benefit payable in letters that they sent to the children and are in the court record. Thank you. Thank you, Your Honor. I have three very brief points. First, let's clear up the question of what the quadro does and what it doesn't do with respect to pension benefits versus death benefits. The quadro uses this language, and I'm quoting from Excerpts of Record 34 here, using the national plan as an example. The language is identical through the three plans. It says in paragraph 3, the husband shall name the children of the marriage, David and Sarah, as the beneficiaries under the pension in lieu of life insurance, which he is presently unable to obtain. Clearly, pension benefits are being awarded to the children in this quadro, not a lump sum death benefit. But isn't it contemplated that if you get a pension in lieu of life insurance, it's basically they're trying to give him a death benefit in case he dies? Well, that's a creative theory, I think. I think the quadro must be a lot more specific than that if it is awarding death benefits. Moreover, the only way to extinguish a QPSA is to award survivor rights to a former spouse. That's the only way Mary Hamilton can lose her benefits in this case, regardless of what other language may appear in the quadro. That actually covers my second point, which is the court's observation that we are, in fact, extinguishing. What the court did here is extinguish a statutory right that Mary Hamilton had. My distinguished counsel referred to the word assignment as not being the same as divest or displace. But in fact, Mary Hamilton has lost her right to any benefits under a QPSA. We have extinguished her right in this case, and the statute says otherwise. The final point I'd like to make is the court's observation that perhaps the statute could be read as being ambiguous. That's certainly not our view, and it's not the view of other courts and commentators that have looked at this statute. However, even if the statute were ambiguous, each of these three plans grants discretion in the plan administrator to interpret plan provisions, and the standard of review that we are looking at when the plans do interpret those provisions is the arbitrary and capricious standard. And even if there were some hint of ambiguity here, we do not believe that the children have overcome that very stringent standard of review. Thank you very much. Thank you. I thank both counsel for your arguments, and the case of Hamilton versus the Washington State plumbing and pipe fitting is submitted.
judges: Cudahy , T.G. Nelson, McKeown